We have one case to look at this morning. Kevin Jones v. The Merit Systems Protection Board, 2022-17-88. Mr. Pershing. Good morning, Your Honors. May it please the Court. This appeal turns on the similarity of two jobs. The agency-side employment and personnel lawyer job that Petitioner Kevin Jones had at the Agriculture Department and the agency-side employment and personnel law job that he transferred to at ATF. GS-14, same series, same work, same subject matter. The AJ had a hearing on jurisdiction alone. Let me ask you a question about standard of review before we get into the details of the case. What's our standard of review as applied to this particular type of case and the particular stage of the proceedings that we have now? Wonderful. Obviously, the Court has de novo review power of rulings of law in the AJ. Obviously, you know what happened. The AJ had a decision. The decision became final vibration of law. There was no quorum to go to anyway at the Board, so we're basically here on review of the AJ's decision. So matters of law, de novo review. Matters of fact and similarity is, so the cases tell us, matter of fact. More deferential review, I would say a discretion standard. Substantial evidence. Substantial evidence in various ways the cases put it, right? Supported by substantial evidence. Product of reasoned decision making. You see that very much emphasized in the amicus. But the rule that we typically apply to factual determinations made by an agency is substantial evidence. Yeah, that's right. And I think the case here... Do you agree that that's the right standard for factual determinations where the law has been applied as you see it consistently with your view as to what the legal principles are? I do, and I also think substantial evidence was lacking in support of the AJ's decision and plainly present on the other side, and that's why we're here. Ah, but plainly present on the other side won't do it, right? Not alone. Correct your honor. Right. Okay. And I'm anxious to hear how there's not substantial evidence for what the AJ said. But just before we get there, do you agree, I take it you agree that the AJ correctly understood the regulatory definition of similarity and what we said about the definition of similarity in math is? Honestly, your honor, I don't know if the AJ correctly understood that. All we have is an opinion. It appears that the opinion was not only not based on substantial evidence, but basically took Amand out of the sky and tried to match it, which is the approach this court rejected in Mathis. So I honestly don't know what the AJ understood. Of course, we have the statute. The AJ certainly invoked the statute in the same or similar 7511A1B. Let me put it this way. Is there an error of law that you think you have identified in terms of how the AJ articulated what similar requires? I do. And it's basic. If you say that the only comparison you need to make to establish similarity is to say, pick a case out of the air, try to match it by specific duties. You take the ancient, if you will, and and thoroughly discredited exact interchangeability approach and try to resurrect it. And that's exactly what Mathis says we don't do anymore. So this court is now under Mathis for a long time. And Mathis tells us to deal with the fundamental character of the jobs to look at. You know, we have a wonderful list of criteria. Just to be clear, you think on de novo review, we could say that this AJ erred by applying the exact interchangeability test when she never says anything like that. Right. She never said that's what she was doing. It appears that is what she was doing. But as I say, honestly, I do not understand the ruling. So that's a shame. It's an exception. I think plenty of AJ opinions are lucid and easily decipherable. In my opinion, this one is not. I believe this what happened here was the judges took a case out of the air, tried to match the duties and frankly did so in a disingenuous manner. If I could very quickly return to the standard of review issue and I don't want to take up a lot of your time on this. This is a case which is made a little complicated by the fact that the word jurisdiction pops up in two different places. First jurisdictional question is, has the claim of board jurisdiction been non-frivolous for purposes of getting a hearing? The second question is, if you get over that hurdle, and that's a hurdle which I take it is subject to de novo review. My judgment is yes, sir. If you get over that hurdle and you have a hearing, then we're into the situation where the determination is based on, as we talked about previously, finding conclusions of law and finding in fact substantial evidence. Now what's confusing in this case is that AJ initially said that there was not a non-frivolous showing that was made in this case. But she went ahead and had a hearing, which is exactly what would have happened had she made a determination that it was a non-frivolous showing. So should we not take what she did at the end, which is to find that there was no showing that he was an employee with the same or substantial job, as being a determination once she had established that there was a non-frivolous showing? It's peculiar, Your Honor, isn't it? I think of it as the non-frivolousness standard is sort of a not unlawful way to put this. The difficulty is that there is, I think, a zone between demonstrating that the allegation jurisdiction is present is non-frivolous, and on the other hand, a demonstration that jurisdiction is present. And it seems to me that what the judge was doing, and what I feel other AJs do, and perhaps the court can clear this up, is that they sometimes conflate the two. I don't think that's a problem here, because in our judgment, jurisdiction was present, but in any event... What I'm trying to get at is, do you understand the AJ to have, in effect, made a determination that there was jurisdiction sufficient to make a determination as to whether he was an employee by a preponderance? Which is what she seems to be, as I read it, what she ultimately did. As opposed to saying, well, what she really did was that she said there was not a non-frivolous showing. I cannot tell for sure. If ultimately the judge believed, this is not what was said in the opinion, that the allegation was not non-frivolous, that's how they couch the standard, because that's what's in the cases. I believe the judge was leaping ahead, if you will, advancing to the next stage, which is, is jurisdiction present, taking for a given that the allegation to that effect was not frivolous. So that's how I come down. I don't know if it matters. I am grateful for the court's close attention to this problem. I hope this clears up some AJ's, as I say, occasional conflations in this area. Let's come back to substantial evidence. What fact findings did the AJ make that are not supported by substantial evidence, in your view? The entire raft of factual considerations of similarity was just misguided. And as to whether it's a question of fact or a question of law, plainly the determination where the two jobs are similar is a fact question. But what law you apply to the basic framework to consider those facts, that's a legal question. And I'm sorry to say, I believe the judge erred previously. But you stood up to say, and I think this is what we were all interested in, and then we asked you some other important things. But I think you said we have to apply a substantial evidence standard at some point in our analysis, and that there is not even substantial evidence on the other side. So can you give me even an example of a finding that the AJ relied on that's not supported by substantial evidence? Well, here's one. The judge hung her hat, and I don't know if one hangs one's hat anymore in this world, but the judge hung her hat on litigation versus non-litigation areas of the duties of Mr. Jones. But if you read the PD, and I know we're not supposed to go by the PD alone, it's written deliberately to give us what lawyers must do, not just what litigators must do. It says, mastery of statutes, regs, precedents, and relevance. Okay, but I'm not sure if I understand how that helps you. It seems to me either undisputed or there's at least substantial evidence for the fact that at the USDA, your client was largely a litigator of discrimination cases, whereas when he moved over to ATF, in DOJ, he was largely dealing with disciplinary actions as opposed to discrimination, and he wasn't litigating. He was advising the decision-makers at this PRB. And he did that at both places. Fine, but is anything I just said not supported by substantial evidence? I suppose it's a question of emphasis, but in my judgment, the emphasis is so misguided as to amount to a flouting of the substantial evidence that was there. Now, the court is asking whether what the AJ said in this case had substantial evidence supporting it. I think there was insubstantial evidence. I think she simply twisted the evidence. I don't think that's the product of reasoned decision-making, nor do I think that that is how you show that substantial evidence supported what you were doing. The problem, I think, that Your Honor flagged before informs this, which is I don't think the court really grappled with the substantial evidence problem in the first place. She just picked the amend case and just tried to match specific duties and got all up in the question of litigation versus non when, in fact, the duties are highly similar in fundamental character. That's a, I think the court could call that a cop-out, meaning a failure to address, a failure to adduce substantial evidence because the use of the evidence that was in the record was frankly so misguided. One of the points you make in your brief is that both jobs involved employment law as a category. Assuredly. But it strikes me that employment law is a very, very broad category. So if we had, instead of the facts of this case, if we had a case in which one job was being, let's say, a lawyer responsible for age discrimination in employment and then the second job involved ERISA, and in one case it was giving advice, the other case it was litigating ERISA cases, that sounds like a big difference to me, even though both would come under the umbrella of employment law. Sure. It's a little like the single subject rule in state constitutional law. The subject is law. Of course that's not good enough. But if we say, I mean, there's a whole range of hypotheticals we could imagine and I've been sitting in my office imagining dozens of them. Let's just take your owner's hypothetical. If we look at, let's say, a completely different area of the law, and we have cases like that, right? The person went from a SSDI reviewer to a trademark reviewer. That's not similar because the subject matter is fundamentally different. If you look at agency side employment and personnel law, which is what he did at AG, and agency side employment and personnel law, which he did at ATF for a short while, until he was, as you know, until he was terminated, those are far closer than the completely different subject matter areas of the law that your honor posits. So discrimination versus discipline seems to me to be a pretty significant difference. I don't see a whole lot of room for overlap, except in cases where, for example, a claim is made that the discipline was predicated on discrimination. Well, very. But other than that. Well, that actually is bigger than just a blip. I think, for example, in the MSPB system, the employees set up affirmative defenses of discrimination. In the EEOC system, they allege discrimination. You still have to decide if discrimination was present on the facts and under the law that you apply in both of these contexts. Discipline of an employee is often about performance. Performance is exactly what the facts are that an agency side employment lawyer is going to be focusing on, and deeply, in case after case, that's what the playbook says to do in both of these situations. It's about job performance. So the job of somebody in Kevin Jones' situation in both of these positions is to get deep into the facts, find out what the performance problems were, stress them, show to the court that either discipline is warranted, sorry, that discrimination is no defense or that discrimination is not present because a legitimate non-discriminatory reason was put forward, and then in the discipline context, you show how the facts demonstrate that discipline is warranted based on misperformance or misconduct. I don't think those deep factual inquiries are that different. If you look at the differences that the court, that this court has talked about where difference, you know, dissimilarity has been found, frankly, they're an order of magnitude farther over. You can't just say they're different. You have to calibrate in some fashion how different. The court gives us contours, although it doesn't give us millimeter by millimeter continuum, and that's because judging is human, but I think the cases are very clear. Mathis and Koradesky and Davis, it just shows how different things have to be because in those cases, differences were considerable and they were not held nearly sufficient to make something dissimilar. We'll give you three minutes for a vote. All right. Your Honor. Thank you.   Could you straighten me out about what exactly the A.J. was doing in this case when she started out by saying that there was not a non-frivolous showing, but nonetheless she had a hearing and she reached a conclusion, which seemed like the kind of conclusion that one would reach after having found that there was a non-frivolous allegation, which do you think is the position that she ultimately took on that issue? Your Honor, I believe that the A.J. found that she, in effect, she did find that there was a non-frivolous allegation. So that was just a false step at the outset? Perhaps just an error, a stray remark, but when we look at the substance of the initial decision, throughout the A.J. discusses the evidence very fulsomely, and she also, she makes findings and states throughout that, you know, I find this, I find that, and I think in that case, you know, she has, you know, she's clearly moved past the non-frivolous allegation stage. She has gone to, you know, whether this appellant met his burden of establishing jurisdiction by preponderant evidence. And as to the standard of review, what do you think is the proper standard of review for us, given the position you've taken that she has actually made the determination of non-employee status? Yes, Your Honor, the standard of review is, well, of course, a jurisdictional question is de novo, but it's substantial evidence in this case, because the jurisdictional issue turns so much on the particular facts of the case. And that's consistent with Mathis, in which this court stated that current continuous service is an issue of fact. Your Honor, substantial evidence supports the A.J.'s finding that appellant's position at the USDA, litigating and advising on EEO cases, was not similar in nature and character to his role at the ATF, assisting the agency with adjudicating employee discipline. The nature and character of appellant's positions at the USDA and the ATF are dissimilar in two main ways. First, substantial evidence established that appellant's two jobs were in distinct legal fields, civil rights law at the USDA and civil service and procurement law at the ATF. Second, appellant's jobs had different duties and required different skills and abilities, because at USDA, he litigated EEO cases, while at ATF, he did not litigate at all. It seems that Mr. Jones had the skills and abilities for both jobs without requiring significant training. Is that relevant to the analysis? That is what he himself could do without further training, or is what's relevant that he had to use different parts of his maybe broad level of skills in the two different positions? Well, Your Honor, by regulation, under OPM's regulation, it's the latter, that two positions are similar when the duties performed are similar in nature and character and require substantially the same or similar qualifications. But further, the MSBB would respectfully disagree that Mr. Jones had the knowledge, skills, and abilities to perform all the duties in his ATF position. In fact, we would submit that the respondent effectively conceded that he did not have the knowledge, skills, and abilities to do contracts law. He testified that contracts is a specialized area, and that's at page 247, and that he had not practiced contracts law at his federal employment, specifically at the USDA. He said specifically that it was not consistent with my career path, that's at page 247, and that no one that I know of, nor would I have said that I ever had experience as a contract law attorney. Well, Tamara, should we attach to the contract law expertise aspect of the case? Because I don't think that the AJ relied on that aspect of the second job, right? So that is correct, Your Honor, but the AJ did make factual findings here. She made findings that this appellant did not have the contract law experience, I mean, that the agency believed that he had. She also made a finding that contracts law was one of his actual duties. What's the strongest statement that she made in her decision that bears on the contract law issue? Because she focused, as I read it, almost entirely on the difference between the substance of the discrimination in one case and discipline in the other, and I didn't see very much on contract. What's the part of her opinion that I should look to to see the extent to which she was relying on contract law? Yes, Your Honor. We would submit that simply her findings, that he lacked that experience, that he did not have the experience that the agency believed that he did, and also that it was one of his actual duties. Where does the board say it was one of his actual duties? Where does the AJ make a finding that contract work is one of his duties? Yes, one moment, Your Honor. Thank you. Your Honor, it's on Appendix 7 where she said that Williams, who was appellant supervisor, and whose testimony she credited in its entirety, testified that the appellant was designated as the alternate contracts attorney and would be expected to perform duties related to the agency's contracts matter, such as bid protests in that role. However, and the AJ did go on to say, that it's undisputed that he did not actually perform any such duties during his ATF tenure, and that is... It's not a suggestion that he was asked to, but refused or stated that he couldn't do it, right? Well... She just says that during the brief time he was there, it didn't so happen that he had any of that kind of work to do, right? Well, Your Honor, he did, you know, his testimony was that he was directed, and the testimony of Ms. Williams was that he was directed to meet with the outgoing contracts attorney and that he did, you know, begin to get some contracts and start to review them, but that he really wasn't prepared to do so. But... He wasn't removed for lack of performance, was he? No, Your Honor. The ATF's position was that he was... Well, they proposed or informed him that they would propose his removal because of his lack of candor about his experience, as they perceived it. And he then, of course, resigned. But in this case, it's not just the contracts piece. It's also, frankly, the employment process. Well, let me pursue the contract a bit. Yes. Is this it, that one paragraph, two sentences, page seven of the appendix with respect to the contract, or did the AJ say anything else about the contract problem? No, Your Honor. The AJ did not say anything else about the contracts issue, but we believe that this Court may properly consider it under Chenery, Killip, because this is a... Because to make a finding that contracts law was one of his actual duties and that he did not, you know, get the knowledge, skills, and abilities to do that in his previous position, that doesn't require this Court to make any additional factual findings. It's, you know, it was effectively undisputed and conceded, in fact, by the appellant, you know, throughout his testimony. Well, perhaps so, but what's missing, it seemed to me, is that having the fact finder making a finding that that was one of the factors that bore on the question of whether this was the same job or so. And that fact finding is not anywhere in her opinion as far as I can see. Okay. Yes, Your Honor. And, um, but, you know, we would submit that there's ample evidence and certainly substantial evidence of record even without the contracts law piece to support the administrative judge's finding that these two positions were not the same or similar. Has our Court ever had to evaluate a case where it was attorneys that were involved in the two positions and, you know, weigh in on whether the similarity analysis should take place at the level of employment law or more refinedly discrimination law versus disciplinary law or, you know, doing litigation versus doing advice? Have we had to confront that question here at the Federal Circuit? No, Your Honor. This Court has not had to, yes, to make a ruling on whether two attorney-advisor positions are the same or similar, where there are differences between them as there were here. But the Board submits that this Court's rulings in cases such as Holloman, which involved two different law enforcement positions in different fields, or in Amend, again, where we have two law enforcement officers' positions where the appellant was expected to enforce different laws and to have knowledge of different legal areas. We would submit that those are germane and could properly inform the Court's analysis. There was, at the time of the briefing, there was a jurisdictional question about our jurisdiction and whether this is a mixed case or not. Is the government now satisfied that he has properly abandoned his discrimination claims? Your Honor, yes, we are satisfied. Thank you. Let me ask you another question dealing with an issue that isn't squarely addressed. Well, I guess the discrimination issue was squarely addressed, but Mr. Sands has shifted. But another question that struck me looking at the materials is normally in these kinds of cases where there's a resignation, there's an issue as to whether the resignation was voluntary or involuntary. And that hasn't been raised here as far as I can see, correct? In other words, you're not contending that that's a second ground for saying that the Board didn't have jurisdiction? That's correct, Your Honor. So given the fact that he was put under a very tight time limit, like one day or something like that, and he chose to resign, that would be – well, you're not contesting that his resignation was voluntary under those circumstances, right? Your Honor, the Board is not – well, for one thing, the agent has not made findings on the issue of whether his resignation was voluntary or involuntary. And that's because the appellant did not meet his burden of getting past the first threshold jurisdictional issue, which is whether he's even an employee. And so with Board appeal rights. Did you argue that before the AJ, the involuntary slash voluntary resignation issue? Your Honor, I represent the MSPB only. But did the agency argue that? But the agency did argue that, yes. Okay. Yes, they argued that issue. But under the Board's case law, an AJ is not to make a finding on involuntary or voluntariness of a resignation if the appellant can't show that they're an employee. And, for example, that was held in the Clark case, Clark v. Department of Commerce. I didn't agree. Thank you. Yes. So, Your Honor, to my first point on the difference between the qualifications, the Board has ruled that two attorney positions in different legal fields are not in the same line of work. In the Clark case, the appellant transitioned from one attorney advisor position adjudicating disability claims to another handling trademark applications. And the Board reasoned that while there were similarities in the broad sense, for example, that in both positions the appellant had to draft final agency decisions, and this is a quote, even positions requiring some similar skills may be dissimilar, whereas here the work is performed in substantively different fields. And that appears in paragraph 13 of the opinion. And we submit that that reasoning is consistent with the source rulings in cases like Holloman and Amend. And so, similar to the Clark case, appellant's jobs here were dissimilar because he practiced civil rights law at the USDA and Title V civil service law and contracts law work at the ATF. The administrative judge here found that civil service law and civil rights law are distinct subject matter areas that are based on different relevant legal principles. Can I take you back to the contract point again? At the gray brief at 19, Mr. Jones argues that the record evidence shows that he was never questioned about his contract law experience during the selection process, and that the attorney hired to replace him lacked any contract law experience or education. Does the government concede, or does the board concede, that that is the record? Yes, Your Honor. I'm not aware of it. And should that not make us, I suppose, more reluctant to try to start making fact findings about contract law being part of his actual duties when I think you've conceded that A.J. made no findings on that point and now you've conceded he was never asked about his contract law experience in the selection process and the person who replaced him had no contract law experience? Oh, no, Your Honor. I wasn't conceding that he wasn't asked about contracts. I was conceding about the experience of the second person. Oh, I'm sorry. It was a two-part question. My apology. Okay, so you concede the second part. How about the first part of what they say at A-19? Record evidence shows that Jones was never questioned about his contract law experience during the selection process. I apologize. Your Honor, I see my time has run. May I answer your question and then briefly conclude? So in this case, you know, the details of the interview process, whether Mr. Jones was forthcoming, whether he was prepared to be a contracts attorney, you know, the real issues in this case and the fundamental issue is whether the two positions, his ATF attorney advisor position and his USDA position litigating EEO cases were substantially similar, whether the duties performed were similar in nature and character and required substantially the same or similar qualifications. And so, you know, whether, I mean, whether we believe that the looking at the two positions and making a comparison of the duties in each, I think the contracts piece is relevant and the experience of the next person or his experience or what he said in the interview doesn't really weigh on that. On the differences between the two positions. Your Honor, for the foregoing reasons, we respectfully request that this court affirm the final decision of the MSPB. Thank you, counsel. Thank you, Your Honor. Just going to your question, Your Honor, about the role of this extra contract, how does it relate? There are three reasons, I don't think I got this out, there are three reasons why this falls short, this situation, his ATF job falls short of the actually performed standard that the cases give us. Here's the three words, peripheral, occasional, and contingent. Peripheral because he didn't have this anywhere near the core of his job duties. This extra contract little supposed extra duty. Occasional because he'd only have to do it every once in a while. It's like being asked to take the shredder out every three weeks. It's occasional. And contingent because he wasn't going to have to do it at all. He thought he was the backup. And it's reasonable to expect from the evidence that he would only be the alternate to the next person. And by the way, the record tells us that the next person hired after him had no contract experience at all. But the difficulty we have with the HA is even before that. Because the HA said these were not duties actually performed so it's not part of the similarity equation. If the judges of this court want to examine that, they would have to make a new finding, a factual finding, on no new evidence that contract law was a great big part of the job, which it simply was not. The evidence would not support that. Where does she say that's not part of her similarity? Contract law is not part, she says it's not actually performed. I have an insight for that. Is it anything more than that one paragraph at A7 that we talked about with your friend on the other side? Yeah, I want to say it's, well, if you're asking about the AJ's opinion specifically, where the AJ actually says there was no, that the contract duties were not actually performed. I want to say that was on page 10 and 11, but I'm not entirely sure. What I thought you were saying is that AJ said that the entire issue of whether he was qualified to do contract work or not is immaterial to the inquiry of saying it's similar. I think that's what the judge said, and she said it because she was... Can you point? Well, we have it on page 7 of the AJ's opinion. Undisputed that didn't actually perform, AJ opinion at 7, and then it says, therefore, there's no, you simply don't include this little contingent peripheral and occasional contract law bit in the similarity equation. Where's the place where she said that? You don't include it in the similarity equation. Right, that's what I'm looking for. Is that your spin because it never comes up again in her opinion, or do you see in her opinion where she does the therefore? I thought there was a place where she says it's not simply, it's not part of the similarity equation at all, but if I don't find language to that effect specific, you know, explicitly in the opinion, I think it's fair to say it's plainly what she did. Not actually performed, the cases tell her not to consider it, so she didn't. Of course, the MSPB now wants it both ways. They want to quarrel with the finding about contract law, but they also want to affirm that two similar jobs are similar. By the way, just looking at Clark, just so we don't have to just say similar. They're similar. Well, Your Honor, they're similar. That's not enough. Look at Clark. This is legal reasoning 101, excuse me, that the AJ did not perform. Clark required seven weeks of mandatory training. Also, as you can see, a red light has gone on. Yes, Your Honor. So we will take the case under advisement.